669 N.E.2d 1300 (1996)
283 Ill. App.3d 455
218 Ill.Dec. 774
Sarah KERNATS, a minor, by Cynthia KERNATS, her mother and next friend, Cynthia Kernats, individually, and Andrew Kernats, Plaintiffs-Appellants,
v.
SMITH INDUSTRIES MEDICAL SYSTEMS, INC., d/b/a Concord/Portex, Inc., a foreign corporation, Defendant-Appellee Howard Grundy, M.D., Evangelical Health Systems, d/b/a Christ Hospital and Medical Center, an Illinois Corporation, *1301 High Tech Medical Parks Development Corporation, an Illinois Corporation, High Technology, Inc., an Illinois Corporation, Carmencita Galvez, M.D., Southwest Obstetrics and Gynecology Ltd., an Illinois Corporation, Defendants.
Joyce OSHODI, individually and as mother and next friend of Kenneth Oshodi, a minor, Plaintiffs-Appellants,
v.
SMITH INDUSTRIES MEDICAL SYSTEMS, INC., d/b/a Concord/Portex, Inc., a foreign corporation, Defendant-Appellee Michael Reese Hospital and Medical Center, an Illinois Corporation, Norman Ginsberg, M.D., Eugene Pergament, M.D., Dr. Meltzer, Alan Cadkin, M.D., Beth Fine, Diagnostic Ultrasound, P.C., Association for Women's Health Care, Ltd., Prenatal Genetic Program of Illinois, Inc., Cook Urological Inc., a wholly owned subsidiary of Cook Inc., Defendants.
Mary Susan WILLIAMS, as mother and next friend of John Calvin Williams, a minor, Plaintiff-Appellant,
v.
SMITH INDUSTRIES MEDICAL SYSTEMS, INC., d/b/a Concord/Portex, Inc., a foreign corporation, Alan Cadkin, M.D., and Illinois Masonic Medical Center, Defendants-Appellees Diagnostic Ultrasound, P.C., Norman Ginsburg, M.D., Individually and as an employee, agent, and/or ostensible agent of Association for Women's Health Care, Ltd., Prenatal Genetic Program of Illinois, Inc., Defendants.
Nos. 1-94-4386, 95-3128 and 95-3129.
Appellate Court of Illinois, First District, Second Division.
September 3, 1996.
*1304 Goldberg & Goldberg, Chicago (David Novoselsky and Margarita Kulys, Chicago, of counsel), for appellants.
Segal, McCambridge, Singer & Mahoney, Ltd., Chicago (Jeffrey Singer, Joseph Shannon and Joshua Murphy, of counsel), for appellee.
Presiding Justice HARTMAN delivered the opinion of the court:
This action involves three consolidated appeals. Plaintiffs in all three cases filed suit against defendant Smith Industries Medical Systems, Inc., d/b/a Concord/Portex, Inc., to recover damages for injuries allegedly caused by a medical product that it manufactured, distributed, and sold. In all cases, the circuit court entered summary judgment in favor of defendant on the ground that plaintiffs' claims were preempted by the Medical Device Amendments of 1976 (the "MDA") (21 U.S.C. §§ 360c-3601 (1988)) to the Federal Food, Drug, and Cosmetic Act (21 U.S.C. §§ 301-395 (1988)). Plaintiffs in all three cases appeal those judgments.[1]
Following oral argument in this appeal, the parties successfully moved that this court await the ruling of the United States Supreme Court in Medtronic, Inc. v. Lohr, 518 U.S. ___, 116 S.Ct. 2240, 135 L.Ed.2d 700 (1996) (Medtronic), which involved issues similar to those presented in this case: whether plaintiffs' state law tort claims are preempted by the MDA.
The allegations and undisputed facts in all three cases are essentially the same. In each case, the mother underwent chorionic villus sampling ("CVS") during her pregnancy. CVS is a medical procedure performed during the first trimester of pregnancy to obtain a sample of fetal tissue which is subsequently analyzed by geneticists for genetic abnormalities. Defendant manufactured, distributed, and sold the CVS catheter used in each CVS procedure. Plaintiffs allege that the CVS procedure caused the minors to be born with limb abnormalities.
Plaintiffs in all three appeals asserted identical theories of liability: (1) strict products liability based on the allegedly defective design and manufacture of the CVS catheter, failure to warn, and inadequate instructions; (2) breach of express and implied warranties; and (3) common law negligence based on failure to warn, inadequate testing, and negligent design of the CVS catheter.[2]
The CVS catheters involved received Food and Drug Administration (FDA) premarket approval on August 9, 1990. The catheter is used in obtaining chorionic tissue samples making possible prenatal diagnosis of genetic abnormalities. 55 Fed.Reg. 42779 (1990). On August 17, 1990, the FDA granted defendant additional premarket approval for the warning label on the CVS catheter.
*1305 Defendant successfully moved for summary judgment in all three cases, based upon asserted MDA preemption of plaintiffs' state law claims. The circuit courts found no just reason to delay enforcement or appeal of the orders pursuant to Supreme Court Rule 304(a) (155 Ill.2d R.304(a)). Plaintiffs timely filed notices of appeal from those respective orders. We consolidated the cases for purposes of appeal.

I
Summary judgment properly may be entered if the pleadings, exhibits, affidavits and depositions on file disclose no genuine issue of material fact entitling the movant to judgment as a matter of law. Dudek, Inc. v. Shred Pax Corp., 254 Ill.App.3d 862, 868, 193 Ill.Dec. 653, 626 N.E.2d 1204 (1993); Bernard v. Sears, Roebuck & Co., 166 Ill. App.3d 533, 534, 116 Ill.Dec. 945, 519 N.E.2d 1160 (1988). The principal issue, that of preemption, is a question of law which will be examined under a de novo standard of review. Zoeller v. Augustine, 271 Ill.App.3d 370, 374, 208 Ill.Dec. 17, 648 N.E.2d 939 (1995); American Health Care Providers, Inc. v. County of Cook, 265 Ill.App.3d 919, 923, 202 Ill.Dec. 904, 638 N.E.2d 772 (1994).
The MDA comprehensively regulates medical devices. The FDA is authorized to classify medical devices intended for human use into three categories based on the degree of regulation necessary to assure safety and effectiveness. See 21 U.S.C. § 360c. See generally Medtronic, 518 U.S. at ___, 116 S.Ct. at 2246.
Class I devices, such as tongue depressors, are subject only to general controls on manufacturing processes because they pose little threat to public health and safety. 21 U.S.C. § 360c(a)(1)(A); Stamps v. Collagen Corp., 984 F.2d 1416, 1418 (5th Cir.1993). Class II devices, such as bone-conduction hearing aids, for which "general controls by themselves are insufficient to provide reasonable assurance of the safety and effectiveness of the device," are subject to special controls. 21 U.S.C. § 360c(a)(1)(B); 21 C.F.R. § 874.3300 (1995). Class III devices, applying to the CVS catheter in this case, present "a potential unreasonable risk of illness or injury," and are subject to the most stringent MDA controls. 21 U.S.C. § 360c(a)(1)(C).
In order to market a Class III device, a manufacturer must provide the FDA with a "reasonable assurance" that the device is both safe and effective. Medtronic, 518 U.S. at ___, 116 S.Ct. at 2246, citing 21 U.S.C. § 360e(d)(2). This is accomplished by obtaining premarket approval (PMA), a rigorous process that requires manufacturers to submit to the FDA detailed information regarding the safety and efficacy of their medical devices. Medtronic, 518 U.S. at ___ _ ___, 116 S.Ct. at 2246-47.
As part of the PMA application for a Class III device, a manufacturer must submit a bibliography of all reports concerning the device's safety and effectiveness, an outline of the device's components and properties, a description of the manufacturing process, safety data, samples of the device, copies of all proposed labeling, and any other information the FDA requests. 21 U.S.C. § 360e(c)(1). See also 21 C.F.R. § 814.20 (1995). The application is referred to a panel of qualified experts for study and submission of a report and recommendation respecting approval. 21 U.S.C. § 360e(c)(2). The FDA retains the right to withdraw its approval if it finds that a device previously approved is unsafe or ineffective. 21 U.S.C. § 360e(e).
Two important exceptions to the PMA requirement allow Class III devices to reach the marketplace without PMA review. First, a grandfather provision allows pre-1976 medical devices to remain on the market until such time as the FDA initiates and completes the requisite PMA. See 21 U.S.C. § 360e(b)(1)(A); 21 C.F.R. § 814.1(c)(1) (1995). Second, the MDA allows devices that are "substantially equivalent" to preexisting devices to avoid the PMA process in order to permit them to compete with grandfathered devices. See 21 U.S.C. § 360e(b)(1)(B). See generally Medtronic, 518 U.S. at ___, 116 S.Ct. at 2247.
Manufacturers of "substantially equivalent" Class III devices must submit to a limited form of review known as "premarket notification" to the FDA (the process is also known as a "§ 510(k) process"), which allows *1306 the device to be marketed without further regulatory analysis if the FDA decides that it is "substantially equivalent" to a preexisting device. Medtronic, 518 U.S. at ___, 116 S.Ct. at 2247. The § 510(k) notification process is limited in scope when contrasted to the PMA process. Whereas the PMA process requires about 1,200 hours of review, the § 510(k) process is completed in an average of only 20 hours. Medtronic, 518 U.S. at ___, 116 S.Ct. at 2247. Section 510(k) notification requires little information and is seldom rejected by the FDA. Medtronic, 518 U.S. at ___, 116 S.Ct. at 2247.[3] The PMA procedure was followed in the instant cases.

II
The Constitution provides that the laws of the United States "shall be the supreme Law of the Land * * * any Thing in the Constitution or Laws of any state to the Contrary notwithstanding." U.S. Const., art. VI. State law that conflicts with Federal law is "without effect." Maryland v. Louisiana, 451 U.S. 725, 746, 101 S.Ct. 2114, 2129, 68 L.Ed.2d 576, 595 (1981). Nevertheless, when considering a preemption question, there is an assumption that a federal law will not supersede the historic police powers of states unless the purpose of Congress is clear and manifest. Cipollone v. Liggett Group, Inc., 505 U.S. 504, 516, 112 S.Ct. 2608, 2617, 120 L.Ed.2d 407, 422 (1992) (Cipollone); Medtronic, 518 U.S. at ___, 116 S.Ct. at 2250.
Congressional purpose is the "ultimate touchstone" in every preemption case. Medtronic, 518 U.S. at ___, 116 S.Ct. at 2250, quoting Retail Clerks International Association v. Schermerhorn, 375 U.S. 96, 103, 84 S.Ct. 219, 222, 11 L.Ed.2d 179, 184 (1963). Congress' intent may be stated explicitly in the language of the statute or implicitly contained in its structure and purpose. Cipollone, 505 U.S. at 516, 112 S.Ct. at 2617, 120 L.Ed.2d at 422-23; Medtronic, 518 U.S. at ___ _ ___, 116 S.Ct. at 2250-51. Absent an express congressional command, state law is pre-empted "if that law actually conflicts with federal law, [citation], or if federal law so thoroughly occupies a legislative field `as to make reasonable the inference that Congress left no room for the States to supplement it. [Citation.]'" Cipollone, 505 U.S. at 516, 112 S.Ct. at 2617, 120 L.Ed.2d at 423.
Section 360k(a) of the MDA provides in pertinent part:
"[N]o State or political subdivision of a State may establish or continue in effect with respect to a device intended for human use any requirement
(1) which is different from, or in addition to, any requirement applicable under this chapter to the device, and
(2) which relates to the safety or effectiveness of the device or to any other matter included in a requirement applicable to the device under this chapter." 21 U.S.C. § 360k(a).
Although section 360k(a) expressly portends to preempt state law, it does so ambiguously. Medtronic, 518 U.S. at ___, ___, 116 S.Ct. at 2250, 2255.
In Medtronic, the Supreme Court noted that the scope of federal preemption under section 360k is ambiguous because the language of the statute "is not entirely clear." 518 U.S. at ___, 116 S.Ct. at 2255. This fact, coupled with the express congressional grant of authority to the FDA to implement the provisions of the MDA (see 21 U.S.C. § 360k(b)), rendered the FDA "uniquely qualified" to determine whether a particular form of state law conflicts with the MDA's objectives. Medtronic, 518 U.S. at ___ _ ___, 116 S.Ct. at 2255-56. These considerations provided sufficient reason to give "substantial weight" to the FDA's construction of the statute. Medtronic, 518 U.S. at ___, 116 S.Ct. at 2256.[4]
*1307 The Medtronic Court found the following FDA regulations most salient in resolving the preemption question. See Medtronic, 518 U.S. at ___, 116 S.Ct. at 2257. "State * * * requirements are preempted only when the [FDA] has established specific counterpart regulations or * * * other specific requirements applicable to a particular device * * *." 21 C.F.R. § 808.1(d) (1995). Further, section 360k(a) "does not preempt State or local requirements of general applicability where the purpose of the requirement relates either to other products in addition to devices (e.g., requirements such as general electrical codes, and the Uniform Commercial Code (warranty of fitness)), or to unfair trade practices in which the requirements are not limited to devices." 21 C.F.R. § 808.1(d)(1) (1995). See also 21 C.F.R. § 808.1(d)(6)(ii) (1995).
The majority in Medtronic emphasized that the primary concern of the MDA was that preemption occur only where a "particular state requirement" threatened to interfere with a "specific federal interest." 518 U.S. at ___, 116 S.Ct. at 2257. The Supreme Court then essentially identified a two-pronged inquiry in this type of case. First, the "specific" federal requirements must be reviewed; if found "applicable to the device" in question, the requirements will preempt state law only if they are "specific counterpart regulations" or "specific" to a "particular device." Medtronic, 518 U.S. at ___, 116 S.Ct. at 2257.
Second, the "particular" state requirements must be examined. In order to be preempted, state requirements must, "with respect to" medical devices, be "different from, or in addition to" federal requirements, and relate "to the safety or effectiveness of the device or to any other matter included in a requirement applicable to the device." Medtronic, 518 U.S. at ___, 116 S.Ct. at 2257. State requirements of "general applicability" are not preempted except where they have "the effect of establishing a substantive requirement for a specific device." 21 C.F.R. § 808.1(d)(6)(ii) (1995); Medtronic, 518 U.S. at ___, 116 S.Ct. at 2257.
The Supreme Court cautioned that preemption analysis under the MDA "require[s] a careful comparison" between the assertedly preempting federal requirement and the allegedly preempted state requirement to determine whether they fall within the scope of the statute and regulations. Medtronic, 518 U.S. at ___ _ ___, 116 S.Ct. at 2257-58.
The Medtronic Court was divided as to whether state common-law damages actions could ever be preempted by the MDA. A majority of the Court held that such actions do impose "requirements" under the MDA and are therefore preempted when the other conditions are satisfied. Medtronic, 518 U.S. at ___, 116 S.Ct. at 2262 (O'Connor, J., concurring in part and dissenting in part).[5] The majority based this conclusion on its reading of Cipollone, in which the Supreme Court noted that "`[state] regulation can be as effectively exerted through an award of damages as through some form of preventive relief. * * * [Citation.]'" 505 U.S. at 521, 112 S.Ct. at 2620, 120 L.Ed.2d at 426.
In Medtronic, the medical device in question was a pacemaker, a Class III device. The manufacturer of the pacemaker notified the FDA that it intended to market the pacemaker as a device that was "substantially equivalent" to products already on the market; it therefore took advantage of § 510(k)'s expedited review process and escaped PMA scrutiny. Medtronic, 518 U.S. at ___, 116 S.Ct. at 2248. Plaintiff there was injured when her pacemaker failed. She and her husband sued the manufacturer under negligence and strict liability counts, alleging defective design and manufacture, failure to warn, and inadequate instructions. 518 U.S. at ___, 116 S.Ct. at 2248.[6] The manufacturer *1308 successfully moved for summary judgment, arguing that the tort claims were preempted by the MDA. The Federal district court dismissed plaintiffs' entire complaint, and the Court of Appeals reversed in part and affirmed in part. Lohr v. Medtronic, 56 F.3d 1335 (11th Cir.1995).
The Supreme Court held that none of plaintiffs' state law tort claims were preempted by the MDA. Medtronic, 518 U.S. at ___, 116 S.Ct. at 2259. With respect to the defective design claims, the Court concluded that under the § 510(k) process, the pacemaker never had been formally reviewed for safety or efficacy; the focus of that procedure had been on equivalence, not safety. Because that process did not impose a federal "requirement," there was no preemption. Medtronic, 518 U.S. at ___, 116 S.Ct. at 2254.
Concerning plaintiffs' manufacturing and labeling claims, the manufacturer argued that the general federal regulations governing the labeling and manufacture of all medical devices were federal "requirements," sufficient to preempt plaintiff's claims. See 21 C.F.R. §§ 801.109, 820.20-820.198 (1995). The Supreme Court rejected that contention, observing that the federal labeling and manufacturing regulations "reflect important but entirely generic concerns about device regulation generally, not the sort of concerns" contemplated by the preemption provision of the MDA. Medtronic, 518 U.S. at ___, 116 S.Ct. at 2258. In addition, the general state common-law requirements in the case were not specifically developed "with respect to" medical devices and were not "the kinds of requirements" that would impede the implementation and enforcement of specific federal requirements. Medtronic, 518 U.S. at ___, 116 S.Ct. at 2258. Accordingly, none of the claims based on defective manufacturing or labeling were preempted by the MDA.

III
In the case sub judice, defendant submitted an application to the FDA for approval of its CVS catheter pursuant to section 360e(c)(1) of the MDA. In August 1989, the Obstetrics and Gynecology Devices Panel, an FDA advisory committee, reviewed and recommended approval of the application. The FDA's Center for Devices and Radiological Health approved the application and notified defendant on August 9, 1990. See 55 Fed. Reg. 42779 (1990).
Defendant urges that the Medtronic decision is not controlling since the CVS catheter, unlike the pacemaker at issue in Medtronic, "ran the gauntlet" of PMA review and obtained FDA approval for its safety and effectiveness. We agree that the facts in the present case are different from those in Medtronic because the medical device here underwent rigorous PMA scrutiny. Yet, we are obliged to follow the analytical framework and guidance provided by the Supreme Court in that case.
One prong in the Medtronic analysis is whether there is a "specific" federal requirement "applicable to the device" at issue. Whether the PMA review process is sufficiently concrete to impose such a preempting federal requirement was not considered by the Supreme Court, but was addressed by several courts prior to that ruling. Most of those decisions hold that PMA review constitutes a specific federal "requirement" within the meaning of section 360k and regulation section 808.1(d). See, e.g., Martello v. Ciba Vision Corp., 42 F.3d 1167, 1169 (8th Cir.1994); Stamps v. Collagen Corp., 984 F.2d 1416, 1421-22 & n. 3 (5th Cir. 1993). But see Kennedy v. Collagen Corp., 67 F.3d 1453, 1458-60 (9th Cir. 1995).[7] We conclude, as have the majority of courts, that the PMA process is a specific federal requirement.
The second prong to be considered is whether the corresponding state requirement was "specifically developed "with respect to' medical devices." Medtronic, 518 U.S. at ___, 116 S.Ct. at 2258. The Medtronic *1309 Court held that common-law claims challenging the manufacturing and labeling of medical devices were not preempted by the MDA because they were simply "general obligations" imposed by the State on manufacturers; they were not state requirements specifically developed "with respect to" medical devices. 518 U.S. at ___, 116 S.Ct. at 2258.
Here, plaintiffs' common-law claims based on the manufacture of the CVS catheter, the failure to warn, and inadequate instructions, are also "general obligations" applicable to all manufacturers and, under the holding in Medtronic, are not requirements specifically established for medical devices. Therefore, they are not preempted under the MDA. Plaintiffs' claims based on defective design and inadequate testing allege that defendant defectively designed and failed to adequately test the CVS catheter. Although these allegations relate to the specific medical device at issue here, they arise, nevertheless, from general duties applicable to every manufacturer. The Medtronic Court explained:
"The legal duty that is the predicate for the Lohrs' negligent manufacturing claim is the general duty of every manufacturer to use due care to avoid foreseeable dangers in its products. Similarly, the predicate for the failure to warn claim is the general duty to inform users and purchasers of potentially dangerous items of the risks involved in their use. These general obligations are no more a threat to federal requirements than would be a state-law duty to comply with local fire prevention regulations and zoning codes, or to use due care in the training and supervision of a workforce. These state requirements therefore escape pre-emption, not because the source of the duty is judge-made common-law rule, but rather because their generality leaves them outside the category of requirements that § 360k envisioned to be `with respect to' specific devices such as pacemakers." (Emphasis added.) Medtronic, 518 U.S. at ___, 116 S.Ct. at 2258.
Similarly here, plaintiffs' claims emanate from general common-law duties and are not the sort of state requirement that section 360k was intended to preempt.
Defendant urges that, as a matter of public policy, allowing this case to go to a jury would thwart Congress' intent to encourage the development of ground-breaking medical devices that operate to improve the health and longevity of the American people. Although Congress' desire to promote the development of medical technology was clearly expressed by the passage of the MDA, its legislative history indicates that "any fears regarding regulatory burdens were related more to the risk of additional federal and state regulation rather than the danger of preexisting duties under common law." Medtronic, 518 U.S. at ___, 116 S.Ct. at 2253. Moreover, any such concern was "far outweighed" by Congress' concern for the safety of those who use medical devices. Medtronic, 518 U.S. at ___, 116 S.Ct. at 2253.
Accordingly, we conclude that plaintiffs' common-law tort claims, based as they are upon general liability principles, are not preempted by the MDA.

IV
Plaintiffs' remaining claims, alleging breaches of express warranty and implied warranties of merchantability and fitness, were not addressed by the Medtronic Court as to whether these types of claims were preempted by the MDA.
Breach of warranty claims, unlike the negligence and strict liability claims raised by plaintiffs, are not common-law tort actions, but are sanctioned by positive legislative enactments of state law. See 810 ILCS 5/2-313 (West 1994); 810 ILCS 5/2-314 (West 1994). They therefore present a different question than the one the Medtronic Court addressed.
We turn to plaintiffs' claim that defendant breached the implied warranties of merchantability and fitness. The FDA regulations specifically provide, as an example of a permissible general requirement, that the Uniform Commercial Code warranty of fitness is not preempted. 21 C.F.R. § 808.1(d)(1) (1995); Medtronic, 518 U.S. at *1310 ___, 116 S.Ct. at 2257. Because these state requirements are of "general applicability," and not "specifically developed `with respect to' medical devices," they do not fall within the purview of section 360k. We conclude that these claims are not preempted by the MDA.
Concerning the breach of express warranty claims, plaintiffs allege that defendant marketed its product with the express warranty that the CVS catheters were fit for the purpose intended, were of marketable quality and free from defects, and would not injure the fetuses of pregnant women.
Our review of this question begins with the Supreme Court's decision in Cipollone. There, plaintiff brought numerous claims, including one alleging breach of express warranty, against a cigarette manufacturer based on certain statements in its advertisements made to his deceased mother. Cipollone, 505 U.S. at 508, 112 S.Ct. at 2613, 120 L.Ed.2d at 418. Federal law required that all cigarette packages contain a health warning, and a federal preemption provision precluded states from imposing a requirement with respect to the advertising of cigarettes whose packages provided the mandated federal warning. The Cipollone plurality concluded the manufacturer's express warranty that smoking did not "present any significant health consequences" was not preempted by the federal provision because the warranty was a "contractual commitment voluntarily undertaken" by the cigarette manufacturer. Cipollone, 505 U.S. at 525-26, 112 S.Ct. at 2622, 120 L.Ed.2d at 428-29. The plurality reasoned that "[a] manufacturer's liability for breach of an express warranty derives from, and is measured by, the terms of that warranty. Accordingly, the `requirements' imposed by an express warranty claim are not `imposed under State law,' but rather imposed by the warrantor." (Emphasis in original.) Cipollone, 505 U.S. at 525, 112 S.Ct. at 2622, 120 L.Ed.2d at 428.
In the context of the MDA, previously there was a split of authority in the federal courts with regard to whether a breach of express warranty claim was preempted. Compare Martin v. Telectronics Pacing Systems, Inc., 70 F.3d 39, 42 (6th Cir. 1995), cert. granted and judgment vacated by, 518 U.S. ___, 116 S.Ct. 2576, 135 L.Ed.2d 1091 (1996), and Duvall v. Bristol-Myers-Squibb Co., 65 F.3d 392, 400-01 (4th Cir.1995), cert. granted and judgment vacated by, 518 U.S. ___, 116 S.Ct. 2575,135 L.Ed.2d 1090 (1996) (preemption) with Michael v. Shiley, Inc., 46 F.3d 1316, 1327 (3d Cir.1995), and Kennedy, 67 F.3d at 1459-60 (no preemption). Courts concluding that express warranty claims were not preempted followed the lead in Cipollone. In Michael v. Shiley, the court stated:
"Express warranties arise from the representations of the parties which are made the basis of the bargain and do not result from the independent operation of state law. * * * The parties to a contract, not the state, define the substantive obligations of the contract and hence any express warranties. While the state provides for the enforcement of the parties' bargain, it does not define each party's duties." 46 F.3d at 1325.
Because the MDA preempted only state requirements having the force of law, not private agreements, express warranties were not preempted. Shiley, 46 F.3d at 1325. We concur.
Decisions holding that express warranty claims are preempted by the MDA were limited to facts involving express warranties based on FDA-mandated labeling, packaging, and advertising, not claims based on a manufacturer's voluntarily-made representations regarding its product. Duvall, 65 F.3d at 400-01. See also King v. Collagen Corp., 983 F.2d 1130, 1135 (1st Cir.1993) (opinion of Torruella, J.). In addition, the judgments in Martin and Duvall since have been vacated by the Supreme Court, as earlier noted. Accordingly, those cases no longer have the force of law.
In the present case, the assertions forming the bases of the breach of express warranty claims arise by defendant's own express representations, not by a state-imposed duty. Therefore, express warranties by a manufacturer are not state "requirements" and thus fall outside of the scope of section 360k.
*1311 From the foregoing, we conclude that none of plaintiffs' state-law claims are preempted by the MDA and the circuit courts erred in granting defendant's motions for summary judgment. Accordingly, the judgments of the circuit courts are reversed and the causes are remanded for further proceedings not inconsistent with this opinion.
Reversed and remanded.
DiVITO and BURKE, JJ., concur.
NOTES
[1] Plaintiff Mary Susan Williams, as mother and next friend of John Calvin Williams, a minor, also appealed from orders dismissing defendants Illinois Masonic Medical Center and Alan Cadkin, M.D. On January 31, 1996, this court entered an order allowing the partial dismissal of these defendants because the issues in their appeal did not relate to the preemption question common to the other consolidated cases.
[2] Those provisions of the Civil Justice Reform Amendments of 1995 relating to product liability actions are inapplicable to this case because they apply only to causes of action filed on or after March 9, 1995. Pub. Act. 89-7, § 15, eff. March 9, 1995. Each of the three consolidated actions involved here was filed prior to the effective date of the amendments.
[3] Another exception to the PMA process permits a Class III device that receives an "Investigational Device Exemption" (IDE) from the FDA to be tested on human subjects without obtaining PMA approval. 21 U.S.C. §§ 360e(a), 360j(g). In this case, the CVS catheter obtained an IDE from the FDA in September 1984, prior to defendant's submission of the PMA application.
[4] The dissenting justices in Medtronic concluded that it was improper to resort to the FDA's interpretation of section 360k because they believed the statute was clear. Medtronic, 518 U.S. at ___, 116 S.Ct. at 2263 (O'Connor, J., concurring in part and dissenting in part).
[5] Justice Breyer agreed with the discussion of the four dissenting justices on this point. Medtronic, 518 U.S. at ___ _ ___, 116 S.Ct. at 2259-60 (Breyer, J., concurring in part and concurring in the judgment). The plurality concluded that future incidents of MDA preemption of common-law claims would be "few" or "rare." Medtronic, 518 U.S. at ___, 116 S.Ct. at 2259 (Stevens, J., plurality).
[6] A third count alleging breach of warranty was dismissed for failure to state a claim under Florida state law. Medtronic, 518 U.S. at ___, 116 S.Ct. at 2248.
[7] In the interpretation of a federal statute, the decisions of the federal courts are controlling on Illinois courts. Golden Bear Family Restaurants, Inc. v. Murray, 144 Ill.App.3d 616, 619-20, 98 Ill.Dec. 459, 494 N.E.2d 581 (1986); Arnold v. Babcock & Wilcox Co., 154 Ill.App.3d 863, 870, 507 N.E.2d 218, 107 Ill.Dec. 554 (1987), aff'd, 123 Ill.2d 67, 121 Ill.Dec. 253, 525 N.E.2d 59 (1988).