James **CHMIELEWSKI** and Sue **Chmielewski**, individually and as husband and wife, Plaintiffs,

v.

**STRYKER SALES CORPORATION,** Michigan corporation; and Osteonics Corporation, Defendants.

Civil No. 4–95–783(JRT/RLE).

United States District Court, D. Minnesota.

June 17, 1997.

Stephen S. Eckman, Kristen R. Rice, Eckman, Strandness & Egan, Minneapolis, MN, for plaintiffs.

William R. Stoeri, Dorsey & Whitney, Minneapolis, MN, for defendants.

## MEMORANDUM OPINION AND ORDER ADOPTING IN PART AND REJECTING IN PART THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

TUNHEIM, District Judge.

Plaintiffs James and Sue Chmielewski filed this diversity action in September 1995 against defendants Stryker Sales Corporation and its subsidiary Osteonics Corporation, maker of the "Omni Fit" hip prosthesis. Plaintiffs alleged negligence and strict liability for design and manufacturing defects in the prosthesis, failure to warn, breach of express and implied warranties, and loss of consortium. Defendants moved for dismissal on the grounds that plaintiffs' claims are expressly preempted by the Medical Device Amendments (MDA), 21 U.S.C. § 360c.

Because the parties submitted materials in addition to the pleadings, Magistrate Judge Raymond L. Erickson treated the motion as one for summary judgment under Fed. R.Civ.P. 56. In a Report and Recommendation dated April 2, 1996, the Magistrate Judge recommended granting summary judgment in favor of defendants on each of plaintiffs' claims. Plaintiffs objected to the Magistrate Judge's recommendation.

Before this Court rendered a decision on plaintiffs' objections, the Supreme Court decided *Lohr v. Medtronic, Inc.,* —— U.S. ——, 116 S.Ct. 2240, 135 L.Ed.2d 700 (1996), an MDA preemption case. In an order dated July 18, 1996, this Court remanded this matter to the Magistrate Judge for reconsideration in light of *Lohr.* The Magistrate Judge again recommended granting summary judgment in favor of defendants in a Report and Recommendation dated February 26, 1997. This matter is now before the Court on plain-

tiffs' objections to this Report and Recommendation.

Pursuant to 28 U.S.C. § 636(b)(1)(C) and D. Minn. LR 72.1(c)(2), the Court reviews *de novo* each of plaintiffs' objections to the Report and Recommendation on this dispositive motion. Summary judgment is warranted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56. After considering each of plaintiffs' objections, the Court adopts the Magistrate Judge's recommendation in most respects, but rejects it as to plaintiffs' negligent manufacturing and loss of consortium claims.

## FACTS

In 1976, Congress enacted the Medical Device Amendments to the Food, Drug and Cosmetic Act of 1938. 21 U.S.C. § 360c. Under the power granted to it by the MDA, the Food and Drug Administration groups medical devices into three classes. Class III devices are the most heavily regulated and require manufacturers to undergo a rigorous approval process known as "premarket approval." 21 U.S.C. § 360e(d)(2).

Manufacturers of experimental Class III devices may apply for an investigational device exemption (IDE). 21 C.F.R. § 812.1(a). Devices sold pursuant to an IDE are exempt from the premarket approval process, and exempt from the FDA's good manufacturing regulations, performance standards requirements, and regulations against misbranded devices. *Id.*

The process for granting an IDE is comprehensive. An IDE application must include, among other things, a description of the methods, facilities, and controls used for the manufacture, processing, packing, and storage of the device, in addition to a complete report of prior investigations of the device. 21 C.F.R. § 812.20. Manufacturers must also submit a written protocol of the study's methodology, a description of each component, and copies of all labeling and informational materials required for the patient's consent. 21 C.F.R. § 812.25.

The MDA contains an express preemption provision:

> Except as provided in subsection (b) of this section, no State or political subdivision of a State may establish or continue in effect with respect to a device intended for human use any requirement—
>
> (1) which is different from, or in addition to, any requirement applicable under this chapter to the device, and
>
> (2) which relates to the safety or effectiveness of the device or to any other matter included in a requirement applicable to the device under this chapter.

21 U.S.C. § 360k(a).

In January, 1985, the FDA granted an IDE to defendant Osteonics Corporation to market its "Omni Fit" hip prosthesis. Plaintiff James Chmielewski was surgically implanted with this hip prosthesis on December 26, 1985. In accordance with FDA requirements for IDEs, plaintiff signed an informed consent form prior to surgery. On October 2, 1992, plaintiff suddenly collapsed due to a break in the femoral component of the prosthesis.

## ANALYSIS

In recommending summary judgment for defendants, the Magistrate Judge relied on the difference between the *Lohr* device's approval process and the IDE approval process. *Lohr* involved a device approved pursuant to the "substantial equivalency" process. *Lohr,* —— U.S. at ——, 116 S.Ct. at 2248. The "substantial equivalency" process allows manufacturers to market devices that are substantially similar to devices already on the market without undergoing premarket approval. *Id.* at ——, 116 S.Ct. at 2247. This process is not meant to ensure safety, but rather to allow competition during the time the FDA completes a review of all devices that were on the market prior to the MDA's passage. *Id.* at ——, 116 S.Ct. at 2254.

The *Lohr* Court followed the FDA's preemption regulation in finding none of the plaintiff's claims preempted: "[S]tate requirements are pre-empted 'only' when the FDA has established 'specific counterpart regulations or ... other specific require-

ments applicable to a particular device' . . . [T]he statute is not intended to pre-empt '[s]tate or local requirements of general applicability where the purpose of the requirement relates . . . to other products in addition to devices.'" *Id.* at ——, 116 S.Ct. at 2257 (quoting 21 C.F.R. § 808.1(d)). Thus, for preemption to occur, there must be a device-specific federal regulation and a specific state requirement. *Id.* Furthermore, the state requirement must be different from, or in addition to, the federal requirement: state law claims that rest on duties "equal to, or substantially identical to, requirements imposed under federal law" are not preempted. *Id.* at ——, 116 S.Ct. at 2256.

The *Lohr* Court determined that the "substantial equivalency" process did not create device-specific federal requirements, and the FDA's general manufacturing and labeling regulations were not specific enough to preempt state law. *Id.* at ——— ———, ———, 116 S.Ct. at 2254–55, 2258. It further noted that the plaintiff's common law claims of negligence and strict liability were not specific to the device. *Id.* at ——, 116 S.Ct. at 2258. Thus, the plaintiff's state law claims were not preempted by federal law.

The Magistrate Judge distinguished *Lohr* on the basis that the IDE approval process, unlike the "substantial equivalency" process, imposes device-specific federal requirements. Thus, he concluded that allowing plaintiffs to maintain their claims would create state requirements which conflict with specific federal requirements.

Plaintiffs object to the Magistrate Judge's recommendation on three grounds. First, they contend that state common law duties are not "specifically developed 'with respect to' medical devices" and thus, under *Lohr*, are not preempted. Second, they argue that, under the FDA preemption regulation, the MDA does not preempt state laws of general applicability. Third, they assert that, under *Lohr*, their claims are not preempted to the extent that they coincide with federal requirements.

### 1. Specificity of State Common Law Duties

■ The Court agrees with the Magistrate Judge that common law claims which conflict with specific federal requirements are preempted, regardless of the general nature of the law from which the claims arise. Plaintiffs are correct that *Lohr* discusses the need for both a specific federal regulation and a specific state requirement for preemption to occur. *Lohr,* —— U.S. at ——, 116 S.Ct. at 2258. Under a strict application of this analysis, common law claims would never be preempted, as they are not device-specific. *See Armstrong v. Optical Radiation,* 50 Cal. App.4th 580, 57 Cal.Rptr.2d 763 (1996); *Kernats v. Smith Industries,* 283 Ill.App.3d 455, 218 Ill.Dec. 774, 669 N.E.2d 1300 (1996); *Connelly v. Iolab Corp.,* 927 S.W.2d 848 (Mo. 1996).

Justice Breyer, however, dissented from the plurality's conclusion that common law claims would rarely be preempted by the MDA, arguing that such claims can impose device-specific requirements that differ from federal requirements. *Lohr,* —— U.S. at ——, ——, 116 S.Ct. at 2259, 2262 (Breyer, J., concurring in part and dissenting in part). As the Ninth Circuit recently noted, "it makes little sense to argue that Justice Breyer would write separately to make clear his position that duties arising under state common law can constitute state law 'requirements' which can be preempted by the MDA, and then agree that because tort law consists of generally applicable principles, it is always preempted, even in the face of specific federal requirements." *Papike v. Tambrands, Inc.,* 107 F.3d 737, 742 (9th Cir.1997).

To make sense of this paradox, it is important to note that, in *Lohr,* the Court found no specific federal requirements applicable to the device. *Lohr,* —— U.S. at ——— —— ——, ——, 116 S.Ct. at 2254–55, 2258. Thus, the Court's holding did not rest solely on the lack of device-specific state requirements. Furthermore, the Court noted that, under FDA regulations, general common law claims may be preempted where they have the effect of establishing a substantive requirement for the device that differs from a device-specific federal regulation. *Id.* at ——, 116 S.Ct. at

2257. Preemption thus depends on whether application of the common law would impose requirements different from device-specific federal requirements, not whether the claims themselves are general or specific.

Since *Lohr,* most circuit courts that have addressed this issue have relied on the lack of specific federal requirements to find that the state claims were not preempted. *See Reeves v. AcroMed Corp.,* 103 F.3d 442 (5th Cir.1997); *Duvall v. Bristol–Myers–Squibb, Co.,* 103 F.3d 324 (4th Cir.1996); *Committee of Dental Amalgam Mfrs. v. Stratton,* 92 F.3d 807 (9th Cir.1996). Accordingly, most circuit courts have found, under *Lohr,* that when device-specific federal regulations exist, conflicting common law claims must give way, even when they are based on general duties applicable to other products. *See Martin v. Telectronics,* 105 F.3d 1090 (6th Cir.1997); *Chambers v. Osteonics Corp.,* 109 F.3d 1243, 1248 (7th Cir.1997); *Papike,* 107 F.3d 737 (9th Cir.1997); *but see Oja v. Howmedica, Inc.,* 111 F.3d 782 (10th Cir. 1997) (holding that a device-specific federal labeling regulation does not preempt a general common law duty to warn).

The Eighth Circuit has not addressed MDA preemption since *Lohr.* In *Martello v. Ciba Vision Corp.,* however, the Eighth Circuit similarly found that common law tort claims that impose requirements different from device-specific federal requirements are preempted. *Martello v. Ciba Vision Corp.,* 42 F.3d 1167 (8th Cir.1994). Thus, the fact that plaintiffs' claims are based on general common law duties does not save them from being preempted, if a conflicting device-specific federal regulation exists.

◼ Given the intense nature of the IDE approval process, most courts agree that it imposes device-specific federal requirements. *See Martin,* 105 F.3d at 1097 (6th Cir.1997); *Berish v. Richards Medical Co.,* 937 F.Supp. 181, 185 (N.D.N.Y.1996). As the Magistrate Judge determined, plaintiffs' strict liability claims would allow a jury to find for plaintiffs even if defendants had complied with all the IDE's device-specific requirements. Thus, plaintiffs' strict liability claims are preempted because they would impose different or additional state requirements on defendants.

◼ Similarly, plaintiffs' negligent design and failure to warn claims would allow a jury to find fault with the prosthesis' design and labeling. The FDA, however, approved the prosthesis' design and labeling for experimental use. Plaintiffs' negligent design and labeling claims would thus also impose different or additional state requirements on defendants and are therefore also preempted.

### 2. FDA Preemption Regulation

Plaintiffs object that under the FDA's preemption regulation, § 360k(a) does not preempt state laws of general applicability. *See* 21 C.F.R. § 808.1(d). As noted above, however, a strict application of this interpretation would be inconsistent with the *Lohr* Court's actual treatment of MDA preemption. The Court therefore rejects plaintiffs' objection that the FDA's interpretation of § 360k(a) precludes the grant of summary judgment to defendants as to their strict liability, negligent design, and failure to warn claims.

### 3. Equivalent State and Federal Requirements

Plaintiffs assert that, to the extent that their claims rest on duties equivalent to duties imposed under federal regulations, they are not preempted. The *Lohr* decision, as well as a number of subsequent lower court cases, support this assertion. *Lohr,* — U.S. at —, 116 S.Ct. at 2255; *Chambers,* 109 F.3d at 1248; *Berish,* 937 F.Supp. at 186.

◼ While plaintiffs have not specifically alleged that defendants failed to follow federal regulations, they have submitted evidence purporting to show that the metal in the prosthesis was not properly processed. Assuming that plaintiffs can show that this alleged processing defect violates FDA standards, their negligent manufacturing claim would not conflict with federal law and thus would not be preempted. *See Lohr,* — U.S. at —, 116 S.Ct. at 2255. Therefore, the Court rejects the Magistrate Judge's recommendation as to plaintiffs' negligent manufacturing claim.

The Court has also considered whether plaintiffs' breach of express and implied warranty claims rest on duties equivalent to federal requirements. Although plaintiffs theoretically could make this argument, they have not done so. Furthermore, they point to nothing in the record which supports their claim that defendants made express warranties about the condition of the prosthesis. The Court therefore defers to the Magistrate Judge's recommendation and grants summary judgment to defendants on plaintiffs' breach of express and implied warranty claims.

Because the Magistrate Judge concluded that all of plaintiffs' product liability claims were preempted, he recommended granting summary judgment on plaintiffs' loss of consortium claim as well. Since plaintiffs' negligent manufacturing claim survives summary judgment, however, plaintiffs can maintain their loss of consortium claim.

### ORDER

Accordingly, based on the above and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that the Magistrate Judge's Report and Recommendation [Docket No. 27] is **ADOPTED IN PART** and **REJECTED IN PART** as follows:

1. Defendants' motion for summary judgment [Docket No. 4] is **GRANTED** as to plaintiffs' strict liability, negligent design, failure to warn, and breach of express and implied warranty claims.

2. Defendants' motion for summary judgment [Docket No. 4] is **DENIED** as to plaintiffs' negligent manufacturing and loss of consortium claims.