143 So.2d 518 (1962)
Margaret D. WILBURN, Appellant,
v.
E. Thomas WILBURN, Appellee.
No. 2392.
District Court of Appeal of Florida. Second District.
July 18, 1962.
Rehearing Denied August 2, 1962.
*519 J.B. Patterson & Associates, Fort Lauderdale, for appellant.
Robert C. Scott and T. Minton Baughman, Fort Lauderdale, for appellee.
KANNER, Judge.
Appellant wife, as defendant below, seeking review of the chancellor's final decree as amended, protests the granting of a decree of divorce to appellee husband upon the grounds assigned, the awarding to him of certain bank stocks, and the sum allowed to her as alimony.
Appellee husband, as plaintiff below, brought suit for divorce, alleging as grounds habitual indulgence in violent and ungovernable temper, extreme cruelty, and desertion. Appellant wife by her answer denied the husband's charges and asserted adultery as a complete defense and also as a defense by way of recrimination. In her counterclaim, she sought alimony unconnected with divorce under the provision of Section 65.09, Florida Statutes, F.S.A. Her charges against appellee husband were those of adultery and extreme cruelty, and by amendment she included the ground of desertion. The chancellor dismissed appellant's counterclaim and held that the husband proved the wife guilty of extreme cruelty and constructive desertion and was entitled to a divorce under the doctrine of comparative rectitude.
Appellant contends that the corroborative testimony as to the extreme cruelty charge is inadequate. The corroborating witness offered by appellee husband was his sister. The testimony which she gave concerned knowledge of acts and conduct of the wife toward the husband occurring in the years 1937, 1938, and 1939. The parties were married on January 1, 1933; and in August of 1955, at the request of the wife, the husband vacated the marital home. They had discontinued marital relations in 1953, when they began occupying separate bedrooms. There is no corroborating testimony offered by appellee relative to the space of time between 1939 and the 1955 separation, a period of about sixteen years, except that hereinafter mentioned. Between 1939, the time to which the last corroborating testimony appertained, and 1953, when marital relations apparently ceased between the two, appellant and appellee lived together; and it was within that intervening period that the minor child of the couple was born. The only testimony offered for corroboration as it might apply more recently was given by appellee's sister, as follows:
"Q. After 1939, were you back down here?
"A. Yes, sir.
"Q. Did you visit with the Wilburns?
"A. I went to their home one afternoon, and Margaret insisted I have supper with them, and I did stay and have supper with them.

*520 "Q. When was that?
"A. I am sorry, I cannot remember that year.
"Q. Approximately when was that?
"A. I would say it was in the late 40's, and then in 1953 I was down here to a convention in Miami, and I went by there and spent the night. I wanted to go to a friend, but Margaret insisted I stay over there and I did stay, but whenever I did anything she didn't like, she took it out on Tom."
Obviously, from the quoted testimony, nothing is indicated as to anything which the appellant wife did or said.
As we view it, the corroborating testimony is inadequate to sustain the charge of extreme cruelty. There are numerous decisions that concern the corroborative evidence principle. See Chisholm v. Chisholm, 1929, 98 Fla. 1196, 125 So. 694; Henderson v. Henderson, 1939, 137 Fla. 770, 189 So. 24; Lear v. Lear, Fla. 1957, 95 So.2d 519; Holmes v. Holmes, Fla. 1957, 95 So.2d 593; Martin v. Martin, Fla.App. 1958, 102 So.2d 837; Fisher v. Fisher, Fla.App. 1961, 134 So.2d 277. See also 10 Fla.Jur., Divorce, Separation and Annulment, section 40, page 453.
Another contention of appellant is that divorce should not have been granted on constructive desertion because the husband had done nothing to effect a reconciliation and resumption of marriage relations following the separation. We do not consider it necessary to delineate the evidence, but we are persuaded that the circumstances were such that they suffice to sustain the decision of the chancellor, notwithstanding the defenses and contentions interposed by appellant.
We consider next the protest of appellant that the chancellor committed reversible error in divesting her of her interest in bank stock which she says is owned jointly by herself and appellee. There were certain stocks acquired before separation and others afterwards. In each instance the title was taken in the joint names of appellee and appellant as an estate by the entireties. Appellee makes no claim of a special equity in the original jointly-held stock which was acquired prior to separation of the parties nor as to the stock dividends accruing from those shares. The chancellor held, however, that the husband has a special equity in the shares of stock held jointly but acquired by the husband through purchase after the separation and directed that the wife transfer these shares of stock to appellee.
The question before this court with reference to stock adverts to 600 shares of stock of the First National Bank of Ft. Lauderdale, bought on February 13, 1959, and 150 shares of First National Bank of Pompano Beach stock purchased on March 31, 1959.
Appellee's ability to purchase these additional shares of stock was rooted in the joint ownership of the originally acquired stock; without the jointly-owned stock, he could not have procured the additional shares. It was to stockholders of record that, through stock warrants issued to them, a preference and option to purchase additional shares at less than market value was given. Appellee, although asserting that he alone paid for the shares of stock, admits that the warrants and options entitling him to acquire the additional shares of stock had value. Regarding his purpose in buying the stock under joint ownership, appellee testified as follows:
"Q. Did you intend to make a gift of these stocks to Mrs. Wilburn, at half-interest?
"A. Partially. There were two thoughts in my mind when I bought these stocks; one was to provide for my family in case anything happened to me, and the second was that these stocks were bought under rights that were issued by the bank and while those rights have a monetary value, Mrs. Wilburn consistently declined to *521 sign any kind of a document with me. I had to buy the new stock in the same way that the rights were issued or lose the value completely on them."
Thus, appellee, in purchasing the shares of stock in February and March of 1959, almost a year prior to the filing of the complaint in the present cause, had in mind two thoughts, 1) provision for his family in the event anything happened to him, and 2) necessity that he buy the new stock in the same way the rights were issued or lose the value on them.
In Florida, when property is purchased by a husband and conveyed to the husband and wife jointly, an estate by the entireties is created; and there exists a presumption that such property interest was intended to be a gift to the wife. Conclusive evidence is required in order to overcome this presumption. Dissolution of marriage by divorce, generally, destroys an estate by the entireties, and converts the husband and wife into tenants in common as if they had never married. By this relationship, each has an equal undivided interest in the property. See Kollar v. Kollar, Fla. 1945, 155 Fla. 705, 21 So.2d 356; Strauss v. Strauss, 1941, 148 Fla. 23, 3 So.2d 727. Our conclusion must be that appellee has not by conclusive evidence overcome the presumption that he intended to make a gift to appellant. Instead, by our view, the bank stock was held as an estate by the entireties and it was error for the chancellor to have ordered the transfer by appellant to appellee of her interest. Consequently, upon termination of the marriage the appellant and appellee became owners of the stock as tenants in common.
As to appellant's assertion with respect to inadequacy of the alimony allowance, we do not find that the chancellor was in error in the amount deemed by him to be proper.
To summarize, the chancellor's decree is affirmed as to the granting of the decree of divorce upon the ground of constructive desertion but not as to extreme cruelty and is affirmed with respect to the alimony allowance but reversed as to the awarding of the bank stock in its entirety to the appellee. Accordingly, the cause is remanded to the chancellor for appropriate revision of the final decree in keeping with the views here expressed.
Affirmed in part and reversed in part.
ALLEN, A.C.J., and SMITH, J., concur.