407 So.2d 949 (1981)
Karen GROH and the Farmers Reliance Insurance Company of New Jersey, a Foreign Corporation, Appellants,
v.
J. Robb HASENCAMP, As Guardian of the Property of Phillip E. Groh, III, a Minor, Appellee.
No. 81-41.
District Court of Appeal of Florida, Third District.
December 8, 1981.
Rehearing Denied January 15, 1982.
*950 Marlow, Shofi, Ortmayer, Smith, Connell & Valerius and Joseph H. Lowe, Miami, for appellant.
Dixon, Dixon, Hurst, Nicklaus & Webb and H. Clay Roberts, Miami, for appellee.
*951 Before HUBBART, C.J., and HENDRY and SCHWARTZ, JJ.
HENDRY, Judge.
Appellants Karen Groh and Farmers Reliance Insurance Company appeal from a final judgment entered by the trial court pursuant to a jury verdict awarding Phillip Groh, III $32,000 in damages for personal injuries.
The incident giving rise to this lawsuit occurred when Phillip Groh, III (Phillip) was kicked by a horse which belonged to his half-sister Karen Groh. The horse, "Dandy", was stabled on five acres of land owned by Phillip's father, Phillip Groh, Jr. (Phil), and Phil's former wife Lorraine. Lorraine operated a nursery on part of the property, and Phil, as president of Utilities Service Corporation of America, operated a kennel on another part. Karen, daughter of Phil and Lorraine, received permission from both parents to keep horses[1] on the property, although Phil claimed he later told Karen to remove the horses. The pasture area where the horses were allowed to roam was surrounded by a wire fence which could be electrified to give off a shock if touched. On June 25, 1976, Phillip, then two and a half years old, ran toward the enclosed pasture, crawled beneath the uncharged fence, and was kicked by Dandy. Phil and his current wife Linda filed suit[2] against Karen and her insurer, Farmer's Reliance, on behalf of their injured son, alleging that Karen had maintained her horse on Phil's property against his wishes knowing that said horse had a dangerous and vicious nature. At trial, appellants' motion for directed verdict was denied and the jury returned special verdict interrogatories finding that the horse was on the property without permission and that Karen was negligent. The court entered final judgment for appellee and denied appellants' motion for judgment notwithstanding the verdict.
Appellants contend on this appeal that denial of their motions for directed verdict and judgment notwithstanding the verdict was erroneous because the evidence was insufficient as a matter of law to sustain an action for either trespass or negligence. We agree and reverse with directions to enter judgment for appellants.
We first address that portion of the verdict which found that Dandy was on the property without permission.
Pursuant to a dissolution of marriage decree, Phil and Lorraine each held an equal undivided half interest in the property subject to partition. Kollar v. Kollar, 155 Fla. 705, 21 So.2d 356 (1945); Wilburn v. Wilburn, 143 So.2d 518 (Fla.2d DCA 1962). An attempt was made at trial to show that Phil and Lorraine had, by oral agreement, partitioned the property, but the evidence did not clearly establish this fact, and formal partition of the property was not accomplished until after the accident. As co-owners, Phil and Lorraine were each entitled to equal use, benefit and possession of the whole. McCormick v. McCormick, 220 So.2d 654 (Fla. 4th DCA 1969). Lorraine thus had the authority individually to consent to stabling of the horse on the property and the record demonstrates that such consent was indeed given.
The evidence would also appear to support a finding of implied consent by Phil on the basis of custom, usage or conduct in that Dandy and Karen's other horse remained on the property with Phil's knowledge after his express consent was purportedly withdrawn. See Florida Publishing Company v. Fletcher, 340 So.2d 914 (Fla. 1976), cert. denied, 431 U.S. 930, 97 S.Ct. 2634, 53 L.Ed.2d 245 (1977); Boston Manufacturers Mut. Ins. Co. v. Fornalski, 234 So.2d 386 (Fla. 4th DCA), cert. denied, 238 So.2d 426 (Fla. 1970). Whether implied consent existed need not be resolved, however, because as we have pointed out, Dandy was *952 on the property by express consent of Lorraine Groh. Inasmuch as consent is an absolute defense to an action for trespass, Florida Publishing Company v. Fletcher, supra, no issue of material fact existed, and this basis for liability should not have been submitted to the jury.[3]
We also find merit in appellants' second contention, that the evidence was insufficient to sustain a negligence action. The basis for a finding of negligence in this case would have to be predicated either on Karen's ownership of the horse or the breach of a legal duty owed to Phillip. The well-settled rule of law with respect to owners or keepers of domestic animals is:
The owner or keeper of a domestic animal is bound to take notice of the general propensities of the class to which it belongs, and also of any particular propensities peculiar to the animal itself of which he has knowledge or is put on notice; and in so far as such propensities are of a nature likely to cause injury he must exercise reasonable care to guard against them and to prevent injuries which are reasonably to be anticipated from them.
Loftin v. McCrainie, 47 So.2d 298, 301 (Fla. 1950). Accord, Rodriguez v. Newby, 131 Ga. App. 651, 206 S.E.2d 585 (Ct.App. 1974); Williams v. Pohlman, 146 Ind. App. 523, 257 N.E.2d 329 (Ct.App. 1970); Ewing v. Prince, 425 S.W.2d 732 (Ky. 1968); Finneran v. Wood, 249 Md. 643, 241 A.2d 579 (1968) and cases cited; Buchholz v. Shapiro, 48 A.D.2d 694, 368 N.Y.S.2d 46 (App.Div. 1975). See generally, Annot. 85 A.L.R.2d 1161, 1163 (1962).
Horses are domestic animals and presumed not to be vicious or dangerous, Moessinger v. Johnson, 292 So.2d 606 (Fla. 2d DCA 1974), so the above standard is applicable sub judice. Here, the record does not reveal any facts which would indicate any prior vicious conduct by Dandy or Karen's knowledge thereof. Accordingly, liability in this case could not rest solely upon Karen's ownership of the horse.
We next examine whether the verdict is sustainable on the breach of some duty Karen owed to Phillip.
Although evidence was adduced at trial to show that on the morning of the accident Karen had placed Dandy into the pasture without turning on the fence charger, this omission cannot serve as the basis for a determination of negligence since there is no statute or decisional law in Florida requiring that a fence around a horse pasture be electrically charged and that the charge be maintained at all times when the horse is present. In addition, the testimony at trial indicated that the fence charger was installed for the express purpose of keeping the horses in, not children out. As there was no duty on Karen's part to either install or maintain an electrical charge on the fence, failure to turn it on the day of the accident is not actionable.
Appellee also sought to predicate liability on the alleged violation of a zoning ordinance. Evidence was introduced at trial to show that the presence of the horses on the property was a violation of the applicable zoning ordinance, EU-M, half acre residential estates. The zoning provision makes no reference to horses or other domestic animals for that matter, but the chief zoning inspector for Dade County testified that keeping a horse in an EU-M zone would be a violation of the code.[4] Prior to deliberation, the jury was instructed that violation of a zoning ordinance is evidence of negligence.
*953 Assuming, arguendo, that the ordinance prohibits horses and applies to Karen Groh (since she neither owned nor possessed the property), evidence of negligence standing alone is insufficient to allow recovery. To demonstrate actionable negligence, a party relying on violation of a statute or ordinance must establish that (1) he is of the class the legislation was intended to protect, (2) that he suffered injury of the type the statute was designed to prevent, and (3) that the violation of the statute was the proximate cause of his injury. deJesus v. Seaboard Coast Line Railroad Company, 281 So.2d 198 (Fla. 1973); Bryant v. Jax Liquors, 352 So.2d 542 (Fla. 1st DCA 1977), cert. denied, 365 So.2d 710 (Fla. 1978). We find as a matter of law that appellee failed to satisfy even the first two requirements on the basis that (1) the zoning ordinance was promulgated for the protection of the public in general rather than a particular class of persons, see generally, Richardson v. Fountain, 154 So.2d 709 (Fla.2d DCA), cert. denied, 157 So.2d 818 (Fla. 1963); and (2) injury from kicking horses was obviously not the type of harm the zoning ordinance was passed to prevent. Thus, violation of the ordinance, without more, would not support the judgment.
We conclude that the record was insufficient as a matter of law to sustain an action for either trespass or negligence. Accordingly, this cause is reversed and remanded with directions to enter judgment for appellants.
Reversed and remanded with directions.
NOTES
[1] In addition to Dandy, Karen's horse Abdul, and Phillip's pony Buckets were kept at the property.
[2] Prior to trial J. Robb Hasencamp, as guardian of the property of Phillip Groh, III, was substituted as party plaintiff.
[3] Our disposition of this issue renders unnecessary any consideration of appellants' alternative argument, that no action could be maintained for trespass since suit was brought in the name of J. Robb Hasencamp, who was neither owner nor in possession of the property.
[4] The zoning inspector also testified with respect to the "grandfather" clause in the code, by which pre-existing property uses were allowed to continue after adoption of the code. There was evidence that the Groh's ownership of the property and stabling of horses pre-dated the effective date of the code, indicating that such use of the property may be grandfathered in.