**Maris BLINN, Plaintiff,**

v.

**SMITH & NEPHEW RICHARDS, INC., Defendant.**

**No. 95–921–Civ–T–17A.**

United States District Court, M.D. Florida, Tampa Division.

July 6, 1999.

Scott Charlton, Clark, Charlton, Martino & Borders, P.A., Tampa, FL, for Maris Blinn, plaintiff.

William Donald Cox, Fowler, White, Gillen, Boggs, Villareal & Banker, P.A., Tampa, FL, James B. Irwin, Montgomery, Barnett, Brown, Read, Hammond & Mintz, New Orleans, LA, Jerry Lamar McDaniel, III, Law Office of Jerry L. McDaniel, Tallahassee, FL, for Smith & Nephew Richards, Inc., defendant.

### *ORDER ON DEFENDANT'S MOTIONS FOR SUMMARY JUDGMENT*

KOVACHEVICH, Chief Judge.

This cause comes before the Court on the following:

1. Defendant SMITH & NEPHEW RICHARDS, INC.'s motion for partial summary judgment on the issue of IDE preemption and supporting memorandum (Docket Nos. 23–24), and Plaintiff MARIS BLINN's response (Docket No. 28); and

2. Defendant's motion and memorandum for partial summary judgment on manufacturing defect and regulatory violations (Docket No. 36), and Plaintiff's response (Docket No. 46).

### *STANDARD OF REVIEW*

Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). The moving party bears the burden of proving that no genuine issue of material fact exists. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A material fact is one which "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "Where the record taken as a whole could not lead a rational

trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

The evidence presented must be construed in favor of the non-moving party, and that party must receive the benefit of all favorable inferences that can be drawn from that party's evidence. *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962); *Evans v. Meadow Steel Products, Inc.*, 579 F.Supp. 1391, 1394 (N.D.Ga.1984). The Court's function is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial. *See Liberty Lobby, Inc.*, 477 U.S. at 249, 106 S.Ct. 2505. If the non-moving party fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which the party will bear the burden of proof at trial, summary judgment should be granted. *See Jones v. Gerwens*, 874 F.2d 1534, 1538 (11th Cir.1989) (citing *Celotex*, 477 U.S. at 324–25, 106 S.Ct. 2548).

### BACKGROUND

#### I. Statutory Framework

The Medical Device Amendments [MDA] of the Food, Drug, and Cosmetic Act [FDCA], 21 U.S.C. Section 360, make the Food and Drug Administration [FDA] responsible, with the aid of non-governmental experts, for classifying devices entering the market into categories in order to determine the level of regulation necessary to ensure their safety and effectiveness. The MDA divide medical devices into three categories. Class I devices are subject only to the "general controls" that apply to medical devices in all three classes. 21 U.S.C. § 360c(a)(1)(A). Class I devices include items such as tongue depressors, elastic bandages, ice bags and bed pans. *See* Robert Adler, *The 1976 Medical Device Amendments: A Step in the Right Direction Needs Another Step in the Right Direction*, 43 Food & Drug L.J.

511, 513 (1988). Class II devices are subject to "special controls," such as performance standards, patient registries, and the dissemination of guidelines. 21 U.S.C. § 360c(a)(1)(B). Class II devices include bone plates, hearing aids, and syringes. *See* Adler, 43 Food & Drug L.J. at 513. Class III devices are the most heavily regulated. Some examples of Class III devices are pacemakers, intrauterine devices, artificial hearts and artificial joints. *See* Adler, 43 Food & Drug L.J. at 513.

There are two paths by which Class III devices may generally be approved for marketing. The first, pre-market approval [PMA], involves more extensive regulation. It requires the manufacturer to provide a "reasonable assurance" of the product's safety and effectiveness. 21 U.S.C. § 360c(a)(1)(C). This is a "rigorous" process, in which the "[m]anufacturers must submit detailed information regarding the safety and efficacy of their devices, which the FDA reviews, spending an average of 1,200 hours on each submission." *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 116 S.Ct. 2240, 2247, 135 L.Ed.2d 700 (1996). The second, pre-market notification, or the " § 510(k) process" requires only that the manufacturer demonstrate that the device is "substantially equivalent" to a device already on the market. "[I]n contrast to the 1,200 hours necessary to complete a PMA review, the § 510(k) review is completed in an average of only 20 hours." *Lohr*, 116 S.Ct. at 2247.

Devices that are not approved for general marketing may still reach the market on a limited basis through the investigational device exemption [IDE]. *See* 21 U.S.C. 360j(g). The objective of the IDE is "to encourage, to the extent consistent with the protection of the public health and safety and with ethical standards, the discovery and development of useful devices intended for human uses and to that end to maintain optimum freedom for scientific investigators in their pursuit of that purpose." 21 CFR § 812.1(a). "Although

less rigorous than the PMA, the IDE process subjects manufacturers to a completely different set of complex and comprehensive regulations which sets forth detailed procedures for determining whether investigational devices are safe and effective." *Touchet v. Ace Medical Co.,* 1998 WL 531887 at *3 (E.D.La. Aug. 24, 1998). "In order to obtain an IDE, a manufacturer must provide the FDA with extremely detailed information pursuant to FDA promulgated regulations about the device, its manufacture, and the experimental plan for its use." *Id.* The FDA will not approve the IDE if it finds that:

> the risks to the subjects are not outweighed by the anticipated benefits to the subjects and the importance of the knowledge to be gained, or informed consent is inadequate, or the scientific investigation is scientifically unsound, or there is reasons to believe that the device as used is ineffective.

21 C.F.R. § 812.30. IDEs are specifically exempted from many of the requirements to which they would otherwise be subject as Class III medical devices. *See* 21 C.F.R. § 812.1(a).

## II. Facts

This case is one of approximately two thousand products liability actions against this Defendant and other manufacturers of orthopedic bone screws. These actions arise out of the surgical implantation of these devices in the pedicles of the spine. The bone screw devices are used in conjunction with spinal fusion surgery on patients with a number of severe back problems. They are intended to stabilize the spine to allow spinal fusion to take place.

The case was transferred to the United States District Court for the Eastern District of Pennsylvania by the Judicial Panel on Multidistrict Litigation and placed on the docket of MDL 1014, *In re Orthopedic Bone Screw Products Liability Litigation,* before the Honorable Louis C. Bechtle. Following pretrial proceedings and discov-

ery, the case was remanded to this Court for disposition.

The facts as stated are taken from Plaintiff's complaint and the exhibits to Plaintiff's and Defendant's pleadings. Defendant manufactures the Rogozinski Spinal Rod System, a bone screw device. In 1990, Defendant applied for an IDE for use of the Rogozinski System in the pedicles of the spine. At that time, Defendant already had § 510(k) clearance for use of the Rogozinski System in the lumbar spine and the sacrum. The FDA required a number of changes and corrections in Defendant's application, which Defendant made. The FDA gave final approval to Defendant's IDE application in August 1991.

Plaintiff suffers from degenerative disc disease. She was identified by Dr. Rogozinski as a potential participant in the IDE study. On March 19, 1992, Plaintiff signed the consent form the FDA authorized for use in the Rogzoinski System IDE study. The form states that the device is experimental. It identifies the following risks of use of the Rogozinski System:

a. All surgical procedures carry the possibility of blood loss, anesthetic complications, deep vein thrombosis (blood clots), blood transfusion reactions, nerve injury, and pneumonia. Some of the possible complications from spinal surgery are: fracture of the bony structure of the spine, failure and/or loosening of the instrumentation, infection, nerve root and/or spinal cord injury, allergic reaction, arterial compromise, and metal ion sensitization or toxicity.

b. The possible complications are not limited to the above and it is not possible to advise one of every conceivable complication. Those outlined are cited to be reasonably known risks of spinal surgery and are presented so your decision may be made on a knowledgeable foundation.

c. The following are risks to which you may be exposed during this investigation: failure of spinal fusion to occur, failure and/or loosening of the instrumentation even in the presence of fusion.

The form additionally outlines the discomforts associated with the operation and the alternatives available, and states that participation in the study is voluntary.

Plaintiff underwent spinal surgery on March 26, 1992, during which the Rogozinski System was implanted. Spinal fusion, the intended result of the surgery, occurred. However, complications from the original surgery developed, and Plaintiff had to have a number of further surgeries. Additionally, the site of the surgery became infected, and has since developed a chronic infection.

### ANALYSIS

Plaintiff's complaint consists of a single count, labeled "Claim Against Smith & Nephew Richards" that appears to include claims on multiple theories, without labeling any of those claims. From Plaintiff's complaint and pleadings it appears that Plaintiff intended to plead breach of warranty, failure to warn, manufacturing defect, and negligence per se claims. The Court will therefore assume that these are the theories under which Plaintiff proceeds. Defendant argues that summary judgment is appropriate with respect to the failure to warn and the breach of warranty claims on the ground that they are preempted by the IDE. With respect to the claims based on manufacturing defect and regulatory violations, Defendant moves for summary judgment on the ground that there are no disputed issues of material fact and Defendant is entitled to judgment as a matter of law.

### I. IDE Preemption

 Defendant argues that claims for breach of warranty and failure to warn on a device subject to an IDE are pre-empted. "By virtue of the Constitution's Su-

premacy Clause, it long has been settled that 'state law that conflicts with federal law is without effect.'" *Goodlin v. Medtronic, Inc.*, 167 F.3d 1367, 1370–71 (11th Cir.1999) (quoting *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 516, 112 S.Ct. 2608, 120 L.Ed.2d 407 (1992)). "A federal statute may preempt state law either expressly, by the statute's language, or implicitly, by the statute's structure and purpose." *Id.* at 1371. The MDA contains a preemption provision, providing that state and local governments may not:

establish or continue in effect with respect to a device intended for human use any requirement—

(1) which is different from, or in addition to, any requirement applicable under this chapter to the device, and

(2) which relates to the safety or effectiveness of the device or to any other matter included in a requirement applicable to the device under this chapter.

21 U.S.C. § 360k(a). Although neither case decided the precise issue before this Court, the reasoning of the Supreme Court's decision in *Lohr* and the Eleventh Circuit's decision in *Goodlin v. Medtronic, Inc.*, 167 F.3d 1367 (11th Cir.1999), are instructive on the issue this Court faces.

### A. The *Lohr* decision

In *Lohr*, the Supreme Court considered the extent to which state law claims regarding a device approved by the FDA under the pre-market notification process are preempted by federal law. The Court stated that its analysis of that question:

is guided by our oft-repeated comment, ... that the purpose of Congress is the ultimate touchstone in every pre-emption case. As a result, any understanding of the scope of a pre-emption statute must rest primarily on a fair understanding of congressional purpose. Congress' intent, of course, primarily is discerned from the language of the pre-emption statute and the "statutory

framework" surrounding it. Also relevant, however, is the structure and purpose of the statute as a whole, as revealed not only in the text, but through the reviewing court's reasoned understanding of the way in which Congress intended the statute and its surrounding regulatory scheme to affect business, consumers, and the law.

116 S.Ct. at 2250 (quotations and citations omitted). The Court considered the legislative history of and purpose behind the MDA, and concluded that the pre-emption provision contained in 21 U.S.C. § 360k(a) could not have been intended to bar all state law claims regarding medical devices. *See id.* at 2251–53.

The *Lohr* Court then considered whether the negligent design claims asserted by the plaintiff in that case were preempted. It noted that the approval process for a device proceeding under the pre-market notification provisions "is focused on equivalence, not safety." *Id.* at 2254. Thus, although the FDA might have examined the § 501(k) application "with a concern for the safety and effectiveness of the device," the FDA did not require to device "to take any particular form for any particular reason." *Id.* The Court also examined the Congressional purpose behind the § 501(k) process. That purpose was "merely to give manufacturers the freedom to compete, to a limited degree, with and on the same terms as manufacturers of medical devices that existed prior to 1976." *Id.* The Court therefore held that state law negligent design claims with respect to a device approved under the § 501(k) process do not impose any additional requirements different from or in addition to those imposed by the MDA, and are not preempted. *Id.* Using the same analysis, the Court concluded that a claim based on violation of FDA regulations would not be pre-empted. *See id.* at 2256.

The Court then addressed the question of whether a failure to warn claim was preempted. The federal regulation in question "requires manufacturers of every medical device, ... to include with the device a label containing 'information for use, ... and any relevant hazards, contraindications, side effects, and precautions.'" *Id.* at 2256 (quoting 21 C.F.R. §§ 801.109(b) and (c)). The Court stated that "the federal requirements reflect important but entirely generic concerns about device regulation generally, not the sort of concerns regarding a specific device or field of device regulation which the statute or regulations were designed to protect from potentially contradictory state requirements." *Id.* at 2258. It noted as well that "the general state common law requirements in this case were not specifically developed 'with respect to' medical devices." *Id.* The Court stated that:

the predicate for the failure to warn claim is the general duty to inform users and purchasers of potentially dangerous items of the risks involved in their use. These general obligations are no more a threat to federal requirements than would be a state-law duty to comply with local fire prevention regulations and zoning codes, or to use due care in the training and supervision of a workforce. These state requirements therefore escape pre-emption ... because their generality leaves them outside the category of requirements that § 360k envisioned to be "with respect to" specific devices such as pacemakers.

*Id.* at 2258.

### B. The *Goodlin* decision

In *Goodlin*, the Eleventh Circuit addressed the extent to which state law claims are preempted with respect to a medical device approved under the more rigorous PMA process. The Eleventh Circuit interpreted *Lohr* as meaning that a state law claim would be preempted by section 360k(a) if three requirements were met: "(1) the imposition of a specific federal requirement that (2) applied to a particular device and (3) focused on the safety and effectiveness of the device." *Goodlin,*

167 F.3d at 1372. The *Goodlin* court stated that, although the MDA imposes a number of requirements on PMA applicants, "neither the FDA's actual review of a device and its supporting information nor the agency's eventual approval of the device imposes any ascertainable requirement upon the device." *Id.* at 1375. Instead:

> The approval represents only a finding that the manufacturer's proposal to market a device has reasonably assured the FDA of the device's safety and effectiveness. Nor does the FDA's willingness to notify an applicant of deficiencies and to propose modifications to the PMA application add any further force to [the] argument for preemption, because an applicant who corrects or modifies a deficient PMA application before receiving the FDA's approval stands in no better position that an applicant whose initial PMA application was flawless. In either case, the FDA enters a finding that the applicant has furnished the relevant assurances and therefore may begin to market its device. In neither case, however, does the approval provide any indication of what (if any) specific substantive requirements the FDA may have applied to reach that result.

*Id.*

The Eleventh Circuit recognized that its decision regarding the preemptive effect of PMA approval was at odds with the decisions of other courts. Nonetheless, it stated that its holding was supported by the language and structure of the MDA. The stated purpose of the MDA is "provid[ing] for the safety and effectiveness of medical devices intended for human use." *Id.* at 1378 (quoting Pub.L. No. 94–295, 90 Stat 539, 539 (preamble)) (alteration in original). Moreover, passage of the MDA was prompted by "several highly publicized incidents involving defective medical devices." *Id.* "It would have been inconsistent for the same Congress that enacted these sweeping reforms to make a potentially dangerous industry safer for patients by blocking the admission of defective devices to the market, then to preempt product liability suits when those devices caused injury." *Id.*

## C. Failure to Warn

Neither the Supreme Court nor the Eleventh Circuit has addressed the issue of preemption with regard to devices introduced under an IDE. The federal courts that have considered this issue post-*Lohr* have uniformly held that there is at least some preemptive effect to an IDE. *See Chambers v. Osteonics Corp.,* 109 F.3d 1243 (7th Cir.1997) (strict liability and breach of warranty claims preempted; negligent manufacturing claim not preempted); *Martin v. Telectronics Pacing Systems, Inc.,* 105 F.3d 1090 (6th Cir. 1997) (manufacturing defect, design defect, inadequate warning, and supplier liability claims preempted); *Touchet v. Ace Medical Co.,* 1998 WL 531887 (E.D.La. Aug. 24, 1998) (design defect and failure to warn claims preempted); *Chmielewski v. Stryker Sales Corp.,* 966 F.Supp. 839 (D.Minn. 1997) (strict liability, negligent design, and failure to warn claims preempted; negligent manufacturing claim not preempted); *Berish v. Richards Medical Co.,* 937 F.Supp. 181 (N.D.N.Y.1996) (negligence and products liability claims were preempted, claim for regulatory violation not preempted). Nonetheless, in light of the Eleventh Circuit's opinion in *Goodlin,* this Court must carefully examine both the requirements imposed by the federal regulations applicable to devices subject to an IDE and Congress' purpose in providing for the IDE to determine whether Plaintiff's claim is preempted.

Plaintiff alleges that she was not given sufficient warning regarding the potential for infection caused by implantation of the Rogozinski System. In *Lohr,* the Supreme Court examined such a claim, and stated that a claim based on "the general duty to inform users and purchasers of potentially dangerous items of the risks involved in their use" was not preempted

by the federal requirement to include on the labels of medical devices information regarding "any relevant hazards, contraindications, side effects, and precautions." *Lohr,* 116 S.Ct. at 2256, 2258.

Defendant argues that failure to warn claims are nonetheless preempted in the IDE context for two reasons. First, Defendant argues that the modifications the FDA required on the label of the Rogozinski System constitute device-specific requirements. As discussed above, in the time since Defendant filed its brief, the Eleventh Circuit rejected this argument in the context of devices subject to the PMA process. *See Goodlin,* 167 F.3d at 1371.

■ Second, Defendant argues that the FDA regulations regarding IDEs evidence an intent to exempt IDEs from claims such as Plaintiff's. The IDE regulations expressly exempt IDEs from the labeling requirements the Supreme Court discussed in the context of failure to warn claims. *See* 21 C.F.R. § 812.1(a). The analytical framework of Defendant's argument is thus somewhat different than the analysis used in *Lohr* or in *Goodlin,* because the argument is not based on the presence of a particular federal regulation with which a state law claim is alleged to conflict. Instead, Defendant's argument is built on the fact that the IDE regulations provide for *exemption* from particular federal regulations. However, this Court finds Defendant's argument convincing.

As the Supreme Court stated in *Lohr,* "the purpose of Congress is the ultimate touchstone in every pre-emption case." 116 S.Ct. at 2250. The purpose of IDEs is "to encourage, to the extent consistent with the protection of the public health and safety and with ethical standards, the discovery and development of useful devices intended for human uses and to that end to maintain optimum freedom for scientific investigators in their pursuit of that purpose." 21 CFR § 812.1(a). To that end, the FDA has determined that it is appropriate to allow IDE devices to enter the market without having complied with many of the requirements otherwise applicable to medical devices. It does so only after a comprehensive review of, *inter alia,* the labeling of the device and the consent form to be provided to patients, and only if its risk-benefit analysis indicates that the risks to patients from the device are outweighed by the potential benefits of the device.

Permitting a failure to warn claim to stand when there is uncontroverted evidence that the manufacturer complied with the IDE regulations regarding consent and labeling would "permit a factfinder to adjudge as inadequate the FDA approved labeling and warning language, the FDA approved consent form, and the investigator agreements signed by approved FDA investigators." *Touchet,* 1998 WL 531887, at *7. In light of the exemption of IDEs from the labeling requirements to which Class III devices are otherwise subject, and the IDE regulation's stated purpose of allowing freedom for scientific investigation, a state law failure to warn claim would impose requirements of IDEs different from those imposed under federal law. Plaintiff's failure to warn claim is preempted, and summary judgment will be granted as to that claim.

## D. Breach of Warranty

■ Although Defendant moved for summary judgment as to the breach of warranty count on the ground of preemption, this Court does not find it necessary to address the question of whether such a claim is preempted. Plaintiff's claim for breach of an express warranty was dismissed by Judge Bechtle. In Pretrial Order Number 651, the MDL court ordered that all claims for breach of express warranty be dismissed with prejudice, except where plaintiffs responded to a show cause order requiring plaintiffs to identify the specific express warranty at issue, describing how it was relied on, and specifying the manner in which it was allegedly breached. Plaintiff made no such response. To the extent Plaintiff's breach of warranty claim

is based on an alleged breach of an implied warranty, the claim cannot stand under Florida law. With the adoption of the doctrine of strict liability, Florida "abolished the no-privity, breach of implied warranty cause of action for personal injury." *Kramer v. Piper Aircraft Corp.*, 520 So.2d 37, 39 (Fla.1988); *see also, Baker*, 1998 WL 968329, at *2. Therefore, summary judgment must be granted as to Plaintiff's breach of warranty claim.

## II. Absence of Genuine Issues of Material Fact

### A. Product Defect

■ Plaintiff presents no evidence supporting a claim based on product defect, under either a negligence or a strict liability theory. Under either theory, Plaintiff would be required to provide expert testimony that the product was defective and evidence that the product caused the injury of which she complains. *See Alexander v. Danek Medical, Inc.*, 37 F.Supp.2d 1346, 1349–50 (M.D.Fla.1999); *Savage v. Danek Medical, Inc.*, 31 F.Supp.2d 980, 983–84 (M.D.Fla.1999); *Baker v. Danek Medical, Inc.*, 35 F.Supp.2d 875, 878–81 (M.D.Fla. 1998). The only evidence Plaintiff offers going to the issues of defect and causation is a quote from a deposition, which Plaintiff does not provide to the Court, from a doctor Plaintiff does not identify, stating that the implantation of a foreign object, such as an orthopedic rod or an artificial joint, can cause infection. Plaintiff offers no evidence that the Rogozinski System was defective and no evidence that it was the Rogozinski System that caused her damages. Without any evidence as to these two elements, there is no genuine issue of material fact and no rational trier of fact could find for Plaintiff. Summary judgment will be granted as to Plaintiff's claims of product defect.

### B. Negligence Per Se

Defendant argues that Plaintiff fails to establish a negligence per se claim based on any regulatory violation because Plaintiff fails to identify any applicable statute or regulation Defendant violated, and because Florida law does not allow the use of a statutory violation as the basis for civil liability unless the statute expressly provides a private cause of action. In its response, Plaintiff again fails to specifically identify a statute or regulation Defendant allegedly violated. Plaintiff does refer in general terms to violations of the FDA's regulations regarding informed consent and regarding marketing and promotion, presumably referring to the regulations promulgated by the FDA under the authority granted to it by the FDCA.

■ Assuming that the alleged regulatory violation under which Plaintiff proceeds is a violation of FDA regulations, a negligence per se claim is not available to Plaintiff. Under Florida law, whether there is civil liability for violation of a statute depends on legislative intent. *See Murthy v. N. Sinha Corp.*, 644 So.2d 983, 985–86 (Fla.1994). In the absence of evidence "of a legislative intent to create a private cause of action," violation of a statute creates no civil liability. *Id.* at 985. The FDCA expressly prohibits private claims for violations of that statute, 21 U.S.C. § 337(a), strongly evidencing a legislative intent *not* to create a private cause of action. Under Florida law, therefore, Plaintiff cannot use a negligence *per se* claim to create a private cause of action for Defendant's alleged violations of the FDCA.

In any event, even under a negligence *per se* theory, a plaintiff must prove causation. *See Groh v. Hasencamp*, 407 So.2d 949, 953 (Fla. 3d DCA 1981). As is discussed above, Plaintiff has not satisfied this requirement, because she has not shown that the use of the Rogozinski System was the cause of her injury. Therefore, summary judgment will be granted as to Plaintiff's claim of negligence per se. Accordingly, it is

**ORDERED** that Defendant SMITH & NEPHEW RICHARDS, INC.'s motions

for summary judgment (Docket Nos. 23, 36) be **GRANTED;** and the Clerk of the Court shall enter judgment in favor of Defendant.

**DONE AND ORDERED.**